Oral argument not to exceed 15 minutes per side, Counsel Wolf for the Plaintiff Appellant. Counsel for the Appellant may approach the podium and proceed. Good afternoon, Your Honors. May it please the Court? Good afternoon. My name is Jonathan Wolf. I represent the Plaintiff Appellant in this matter, Ms. Tammy Livingston, who is here with us today. I'd like to reserve three minutes of my time for rebuttal, if that's okay. All right. This is an appeal from the Middle District of Tennessee's grant of a 12B6 motion for failure to state a claim. This case was for a declaratory judgment seeking to invalidate a series of copyright termination notices filed under Section 203 of the Copyright Act, filed by Defendant Appellee Traven Livingston, regarding dozens of songs written by famed songwriter Jay Livingston. We know all that. I think we know all this. But can you just explain to me how your client has been harmed? Because there was a revocation of the assignment. I'm going to get the language wrong. But there was a revocation, but then there was a reassignment back to the entity that held the rights, meaning that the trust, it feels like the trust is basically in the same position that it was before all this happened. Absolutely. Thank you, Your Honor. And that was a great question. So the long and short of it is the assignment was only signed by Traven Livingston individually. It's not an assumption by Jay Livingston Music, Inc. They never signed this document. So they're not legally bound to do anything by that assignment. It's just a bald assignment without any obligation to do anything by the publishing company. Sir, are there royalties not being, is your client not receiving the royalties now? Well, she is receiving some royalties, but we can't verify that she's receiving all the royalties, and that's really a separate question. Well, doesn't she get a royalty statement? It's not just a check. She would get a royalty statement. She does get a royalty statement, Your Honor, but in the music industry it's not uncommon for royalty statements to be inaccurate. Yeah, but have you raised an illegal claim about the accuracy or inaccuracy of the royalty statement? In separate litigation we have, but unfortunately there is an arbitration clause in the underlying publishing agreements, and so that's all. Well, you didn't file any representation in this litigation that your client was not receiving proper accounting royalties, did you? I believe we did, Your Honor, in a couple different places, in fact. Well, what did you file or what did you say in that regard? I believe that we said that we specifically allege, I believe, it was toward the end of the facts section, but I believe specifically we said that we identified certain synchronizations for these songs and we don't think that she was paid specifically for those uses of the music. Also, at the time this litigation was filed, she did not receive detailed royalty statements. That only started within the last year or so. Well, in your briefing, did you identify the songs that are covered by this litigation? And when you talked about royalty statements, if you did, we'll look and see. I don't think that's in this briefing because I don't think that was – well, I mean, it actually probably is in the section about live controversy, or maybe it's not. But the – I'm sorry, but the – What relief are you seeking from this court? This court, we would like the case remanded to the district court for further proceedings. We just want to overrule the dismissal. Okay. And what will the district court do at that point? They would set it for further proceedings and eventually a trial on the merits. Okay. But I don't – did you – not that there's an exhaustion requirement, but did you do any due diligence before you filed the case? Oh, yes, Your Honor. And so is there – I mean, I know this is 12B-6, right? So – but I'm not sure I have your complaint in front of me, so I was looking. But in your complaint, do you allege specifically or with some specificity the harm? Yes, Your Honor. I can grab the – That's okay. You don't have to grab it. But, no, it's – we have identified specific songs, specific uses in movies and TV. I understand that, but your client's actually not getting paid. It just feels like you – Yes. It feels like you're sort of speculating she's not getting paid. No, I can defer to the – I mean, to the complaint and the record, but I'm fairly confident – or I'm confident that it is specifically laid out that we believe she's not getting paid. But your belief that she's not getting paid is because – We identified that there were uses of this music that she did not receive money for. Because they didn't tell us that – I mean, at the time, she wasn't receiving statements that would have delineated this kind of thing, but – Just not receiving statements doesn't mean you're not being paid. Well, typically – and typically, Your Honor, the kind – She was receiving statements five years ago or ten years ago before this happened? No, Your Honor. She's never received statements. Well, she's received various – actually, I can only speak – This just feels like a really basic part of the case. Like, I just got to the – I was just like – this just feels like a very – right? Like, I get there's been these transactions that have occurred, but just trying to figure out how your client was harmed, and you're saying she's not getting the royalties, which would make sense, but then it doesn't appear to be very well established. I can show you the specific – No, I'd just prefer you to tell me the story. Yes, okay, so long story short, our client only gets a passive songwriter interest in these royalties, and the publishing company and her relatives just essentially stonewalled her and wouldn't provide any information as to what she was – She was getting some monies. She was receiving some monies, Your Honor. Yeah, and your basis to say it's not enough is it wasn't the full amount. Did material decline over time, or – Yes, and – That's in your complaint? Your complaint says the amount's materially declined? No, because – I mean, Your Honor, specifically to your question about the uses, typically when a song is used like in a TV show or a movie, it's a pretty big lump sum amount, and that has historically been the case. And so, in fact, I can think of a specific example where she – it was used in a big commercial, and she got tens of thousands of dollars, and that was – and so she noticed several uses of the music, new uses that would have generated big licenses, and they didn't have a corresponding royalty payment. That's articulated in the complaint? Yes, Your Honor. You know, the defendants conceded in their brief that your client had a contractual right to receive royalties for these musical compositions. So they admit that. They're not disputing that. And if the dispute was simply about royalties, if you thought that the amount that's being provided was incorrect, it seems like you just have a lawsuit pertaining to royalty payments, whether the calculations were accurate. But you don't – I guess you're not satisfied with their agreeing that your client has a right to receive these royalties. So two separate issues. To your first point about the agreement, whether she's entitled to receive, she's entitled to receive the royalties from the terms of the trust, but that's completely different than the publishing company's obligation to pay the royalties. And so what they're basically arguing is that after the termination has become effective, that they have – the publishing company would have no obligation to pay her, but they're not disputing her right to receive the royalties as a beneficiary of the trust. Where have they filed anything saying that they don't have to pay? That's in their response to the motion to dismiss. In fact, I've got that on the record. I'm wondering what you're referring to there. It is – I'm not sure. I don't have that section in front of me, but it is in the brief, and it is stated and in their response to the motion to dismiss, and their argument is that they are not disputing, essentially, Tammy's right to receive the royalties, but they do argue that after the termination has become effective, that Travelin is the one that is entitled to get all the money from those terminated songs. But Judge Clay, to your point about the dispute about royalties versus the cause of action in this, this is only – we are only seeking a declaration from the district court that the terminations themselves are ineffective and that the underpayment of royalties is a separate – is a completely separate issue and not before the court. You want to dispute who owns the copyrights, do you not? That's between daughter and granddaughter. We are seeking to invalidate specifically, and only this. We are seeking to invalidate the notices of termination that Travelin filed under section 203 against – by client Tammy. And so what that would – what that does under the Copyright Act – oh, I see you have two minutes remaining. Is that – does that take into account everybody? Bring your lights on so you can continue. Okay. So essentially they are saying that once they file these copyright terminations under section 203, the U.S. rights just revert back to the filer of the notices of termination under the termination scheme. Well, we have to determine as a legal matter whether the assignments of rights and whether these termination notices are valid or not as a legal proposition. So if you have any – aside from what's in your brief, if you have any argument you want to make about that, now would be the time to do it. Can I – I want to get to that too, but can I just make sure I understand? So you're saying the consequence of these – there has to be a real-world impact on your client, right, to have standing to sue? Yes. So your real-world argument for your harm is that these transactions have somehow limited the rights and royalties received by your client?  So – well, let me zoom out. Your Honor, there are about 900 songs in Jay Livingston's catalog, and we're only talking about 70 or so or 46 or so that were at issue in this litigation. So when I say – so when your Honor asked, like, if she receives royalties before – as of the filing – For these 70 songs. Yes. So as of the filing of this litigation, when she received royalties, it didn't say what songs she was receiving royalties for or not. It was just here's some money. Did you request an accounting? Yes, Your Honor. But that was in separate litigation. What response did you get back? Well, we had to initiate separate litigation, which they invoked the arbitration clause, but eventually – Yeah, but what request did you get back from them from your request for an accounting? Eventually, they started providing more detailed royalty statements. And were those satisfactory? No, but that actually doesn't impact the validity of these termination notices because the thing about the termination is that it only affects the U.S. rights of the song, to my understanding. And so it – she would still receive some royalties. It's just how much from what song. And so that's why we are seeking to invalidate the notices of termination based on the legal realities of the underlying music publishing contracts. Because for those 70 songs, your allegation is that your client is now not getting compensated the way she should be compensated or something, right? There's going to be some harm. Yes, Your Honor. There is harm. It's that she – they are wrongfully using the termination notices to say that Travelin will own all of the song and that they've reassigned it to the publishing company, but it doesn't have an obligation to pay as we pled. So it could be paying the full amount, you're saying, but it could – And that is their argument, but we can't verify it. But also – You're getting paid the full amount. But also, even if they were doing it out, it doesn't – It just should be easier – I've been talking for 15 minutes to explain how you've been – It just should be easier to – maybe I'm just not understanding it, but this – I'm just having a little trouble understanding. So our client has been harmed because – She's out of pocket. Is there a pecuniary harm? We believe she was underpaid with the royalties. For these 70 songs? Yes, Your Honor. But as of the filing of the litigation, we weren't getting royalty statements that were detailed enough to really dig into that, and that's why we were seeking to invalidate the terminations. This case is about the invalidity of these copyright terminations. It's not about the underpayment of royalties. Were the royalty statements legally deficient? And if so, how were they legally deficient? Well, at the outset of this case, they didn't specify what songs – or what uses for the songs were paid for specific amounts of money. I want to get to the merits. I'm sorry, just one last question. So the basis for the complaint is that when Travelyn revoked and then reassigned, she was – her revocation was invalid? I might be using the right term. I might be using the wrong terms. Are you talking about the termination itself or her reassignment to the – Either one. What's the thing that was done improperly? So I think Your Honor is talking about the reassignment. No, I just want to know what you think was done incorrectly. The revocation? Well, we do believe the terminations were invalid legally based on the estate – or the contracts themselves and all that, and that's laid out in the brief. But specifically about the live controversy issue with the reassignment, when she reassigned it, she just assigned it. The company didn't assume the obligations. And so it was a bald assignment without any obligation by the company to pay the royalties. So they essentially just get it. They don't have a corresponding – Didn't the company previously have the obligation to pay royalties to the trust? They did, Your Honor, but that's the point of the copyright termination notices, is that it terminates the underlying copyright. It was designed by Congress to give songwriters a second bite at the apple for bad deals they did back in the day after 35 years. I understand. I'm sorry for taking all your time. I just have one merits question. Yes, sir. The result is California state litigation and the – isn't it California? Yes, Your Honor. Okay. California state litigation, and the order in that case says the family trust holds no publishing royalty interests and no copyright interests, and all such interests ever owned by J.R. Linder are now owned by J. Livingston Music, Inc. I think your friends on their side would say that's dispositive. That was the time and place to raise the arguments you're raising now. The state had no claim, and now you're saying the state has a claim that wasn't raised in this prior case. Oh, well, no, Your Honor. That's not what our argument is. What we were saying is that the publishing contracts were signed individually by Jay, and the probate court order – this was 20 years ago after he died. There was a probate court order that literally just says one line, that the family trust owns no copyrights, and it's all owned by this publishing company. That order didn't talk about Jay's capacity. The order itself didn't talk about Jay's capacity. It didn't talk about the extension of the – Weren't those issues that should have been litigated there? Well, that was the thing is our client wasn't – she was merely a trust beneficiary. She wasn't the petitioner. She wasn't involved in that. She just signed this because she was one of a bunch of beneficiaries that were required under California civil code to receive notice of it because she was one of the participants. But she didn't have a chance to litigate this. She didn't litigate this. But she knew about the existence of the litigation. She knew that they were getting – I mean, her lawyer and she signed a petition that merely requested that the probate court order enter that one line. But that one line doesn't speak to the issues we're litigating today. And frankly, I mean, it would have been unforeseeable that that one line would have this ripple effect 20 years later with a bunch of copyright termination notices just from her standpoint in a fairness of did she have an opportunity to litigate it in the first place. But she was not litigating that case in front of the California probate court. She just – But she had notice of it and was a party or potential party in interest. How would you explain to us why that California court order does not have preclusive effect for this case? Well, first off, Your Honor, they – neither the district court nor the defendants to my knowledge argued any of the preclusion elements in any part of this until we raised it on appeal. But we – as we laid out in our brief, the specific facts of this California probate court order, this one line doesn't meet any of the elements of California law for preclusion. It's not the same issue being litigated. It's not the same primary right. Well, the issue of preclusion would not have been necessarily disposed of in that California court order. We subsequently are trying to determine if that court order is preclusive with respect to this litigation, which is now before us.  And that's what I was asking you to explain. Yes, and that California court order is only one line. And so we would submit that that one line is not the issues we are talking about here today about the underlying issues with these publishing agreements. It's one line. It doesn't – it does not talk – It's one line or ten lines. Isn't the point that you had the chance to litigate the issue and didn't? Well, she didn't have a chance to litigate it because she wasn't – Why not? She wasn't the one arguing. It's already an interest. She was merely a beneficiary who had to sign something so she continued to – because they were modifying the terms of the trust for a bunch of other trust housekeeping matters that weren't directly related to the publishing. And the publishing issue was one line at the bottom. And at the time, she was a – one of many, many, many beneficiaries of this trust that simply had to consent to this trust modification. And a reasonable person sitting in her position 20 years ago couldn't have foreseen that the downstream effects of that one line on the copyright terminations 20 years later – I mean, they hadn't been filed. They also hadn't been filed yet. And so – Were you an attorney of record in that California – Oh, no, sir. That was in 2002 or 2003. So that was 20 years ago, 21 years ago. All right. All right. Here. Thank you, sir. I've been on for a while, so we appreciate your arguments. Mr. Livingston, we'll hear from your brother, Counsel. Good afternoon, Your Honor. Tim Warnock on behalf of Jay Livingston Music Incorporated and on behalf of Travel and Livingston. We would ask this Court to affirm the judgment below and award our client's attorney's fees pursuant to 17 U.S.C. section 505. To answer Your Honor's most recent questions, I believe this appears at page 490 of the record, the probate order that the Court has asked about, and paragraph 12 of that order says, the Family Trust holds no publishing royalty interests and no copyright interests, and all such interests ever owned by Jay or Lynn are now owned by Jay Livingston Music Incorporated. That's what I just read, right? That's right. Right. I'm just pointing to the record citation. Under California law, probate decrees are entitled, in a sense, to a greater finality than ordinary judgments in personam because they're in rem. We've briefed that and cited it, among other authorities, Stevens v. Tarragono at 192 California App 2nd 105. Also, we have relied upon the restatement second of judgments at section 30. Your friend on the other side says that you didn't raise this issue in the District Court. I think I understood him. I don't understand what he's arguing there. We have always argued, and Judge Crenshaw found, that the probate order that we've just been discussing, that I've just cited, conclusively established that Jay Livingston Music owned the royalty interest, so there was never a reason to have argued it before it was raised on appeal, that the probate order was preclusive. Are you saying that he found it was preclusive? Or aren't you saying that he found it was assigned? He found it was assigned, and he found that the probate order answers the question definitively about who owned the copyrights at issue. And it wasn't until the appeal that Ms. Livingston, the appellant, argued that that order had no preclusive effect. In fact, in her response to the motion to dismiss, which I believe appears at page 938 of the record at note 7, I'm sorry, I believe that's right, she did not dispute that the probate order applied. The first time she disputed that the probate order applied was on appeal. At the trial court level, she argued that the language of the probate order didn't do what Judge Crenshaw eventually found that it did. Was she represented at that particular hearing or before that judge? Yes, Your Honor. And her lawyer signed off on it? Yes, Your Honor. Her lawyer signed off, and I believe the record citation is page 490, a lawyer named Randall Davis. So to answer a couple of the other questions that Your Honor has asked, how was she harmed? The district court found that the Second Amendment complaint fails to allege that Travlin did not transfer back certain copyrights into Jay Livingston Music. I believe that that appears at page 1353 of the record. So the court is correct that there is no live controversy. The court asked whether she raised the accuracy of the royalty statements. There was earlier litigation in the federal district court in which she alleged, among other things, that the accountings that she had received were not appropriate. The district court dismissed that case as well, and she elected not to pursue an appeal. The basis of the dismissal is that the contracts at issue that she said gave her the rights that she was trying to enforce in court contained mandatory arbitration clauses, and the district judge found that those were enforceable and that any complaint she had about the royalty statements was subject to arbitration. She neither appealed that finding nor demanded arbitration. I don't know that either of those is part of the record, but certainly the fact that she filed the earlier case appears to be something that my brother counsel does not dispute. I think your opposing counsel said that there was an ongoing arbitration proceeding involving those issues. Is that not correct? That's not correct, Your Honor, and I didn't hear him to say that there was an ongoing arbitration proceeding. I heard him to correctly say that there was a requirement of arbitration, but she, the plaintiff and appellant, has not initiated arbitration. If the court directs its attention to the Second Amendment complaint, and I believe that the request for relief appears at pages 908 to 912 of the record, I don't see a claim for damages there, and Mr. Wolf is correct that his client did make a claim for damages in the earlier litigation that was dismissed, but that is not the basis for relief in the case that's before the court today. What's the difference of what the plaintiff is now getting as royalties and what she would expect? Do you know? I have no idea, Your Honor, and there has been no direct allegation in any proceeding of which I am aware of a specific shortcoming of any payment that she should have received and did not receive, and I don't believe that my brother counsel can point to any point in the record here where she has made a specific allegation that she has been underpaid by a specific amount or based upon any particular evidence or allegation. You haven't really argued that there's no standing or there's no injury. We do not. But how do you understand the injury? Well, if a termination were invalid and if she did not receive royalties that she was entitled to, she might be injured, but I am unaware in the Second Amendment complaint of any actual allegation of injury, and I believe Judge Crenshaw specifically addressed that and found that the Second Amendment complaint failed to allege that travel and did not transfer back, and I apologize for just using her first name. There are so many Livingstons, and I believe that Judge Crenshaw and the district court found the Second Amendment complaint failed to allege that travel and did not transfer back certain copyrights into J. Levinson Music. I believe that appears at page 1353 of the record, and if I'm correct about that, that would be the support, Judge Riedler, for the concept that there was no live controversy. What we have here, Your Honor, is a very thorough opinion written by the district court, and the procedural history of this case, Ms. Livingston filed her complaint. The defendants moved to dismiss. She amended as she had the right to do. The appellees moved to dismiss again. At that point, she asked Judge Crenshaw for permission to file a Second Amendment complaint. He allowed her to do that, and then the pleading before this court is the Second Amendment complaint, and that is the one that Judge Crenshaw dismissed in its entirety. This case is about the fact that a plaintiff cannot continue to outrun arguments just by further amendment. She's had three tries. She's not been successful in any of her attempts to allege a claim that the district court found stated a claim upon which relief could be granted, and this court should certainly affirm the court below. Do you think, sort of the opposite side of the coin from what I was asking your friend on the other side, do you think that these transactions were invalid? No. Under Section 203, I'm sorry, I didn't mean to interrupt. That's okay. I mean, there's some maybe preclusive effect to this, which is odd, because you're saying they all happened as they should. Your friend's saying they didn't happen as they should. And he raised a variety of arguments in the Second Amendment complaint about why the terminations were ineffective, and the district court did not find that any of those allegations was sufficient to invalidate any of the terminations. I understand why he would be opposed to the first revocation, but then there's a reassignment. And you're saying the reassignment's valid. I'm not aware of any reason that it's not valid. Well, his position is that the – who was supposed to – I forget the entities. Who was supposed to receive the – the reassignment was to which entity? J. Livingston Music Incorporated. So the Inc. – there's no – you're not aware of any argument that the Inc. is saying it didn't accept the reassignment or something? I'm aware of no such argument, Your Honor. Okay, because that's the – it's just hard for me to understand what we're – So under the Copyright Act, under Section 203 and the termination right, Travelyn Livingston, as the sole child of Jay Livingston, the composer, had – she had the entire termination right. So it was entirely her decision either to terminate or not terminate. And theoretically – And he would quibble with that. Your friend on the other side would quibble with it, would maybe argue – he thinks it was invalid. He thinks the termination – that the acts of termination were invalid themselves. But I don't think he disputes as a matter of law that Travelyn Livingston is the only person who possessed the right to terminate. And that as the sole child of Jay Livingston, she possessed the entire right to terminate. I believe the argument is, well, if she terminates and fails to reassign, then that might be problematic. And it might be problematic. But what the district court found is that he failed to allege that she hadn't – that she, Travelyn, after termination, had not reassigned. And that's the shortcoming with the pleading. So if that answers the court's question, we respectfully request that the court affirm the judgment below and award attorney's fees pursuant to 17 U.S.C. Section 505. And I believe that concludes my argument unless the court has further questions for me. Apparently not. Thank you very much. Any rebuttal? You had three minutes. Your Honors, I have just two quick points about the issues of live controversy. We were talking about harm. In the second amended complaint, which is in the record at R46, page ID 901 to 902, paragraphs 143 – or 142 and 143. If I could read this real quick. Upon information relief, defendants have failed to pay plaintiff her share of lucrative sink licensing revenue from domestic or foreign commercial exploitation, allegedly from the terminated song, such as whatever will be a case for Rosseroth, Tammy. And specifically without limitation, defendants have failed to pay plaintiff her share of synchronization royalties. Can you file that case? I mean, your friend on the other side is saying there's no problem with the reassignment. Now, maybe he doesn't speak for the company. But can't you – if you think you're not getting the royalties you're entitled to, can't you bring a suit? Maybe you're too late now or precluded. I don't know. But can't you bring a case for accounting, a case for accounting or for the royalties or something? We can, your Honor, but that has to be arbitrated. But really what we're talking about is just the validity of these termination notices. And so I was just trying to address your Honor's point about was there harm. This is the second amended complaint that was the operative complaint in this litigation. And so we pled the harm. Basically, the A point is the initial invalidation was improper. If he was on that, then he still has this other remedy possibly. Well, actually, this was just evidence of her harm as a result of the termination. Maybe it's a separate case, but you have – No, no, this was – I understand. Sorry. Sorry. And actually, so the Ninth Circuit addressed a case similar to this. The Ninth Circuit addressed a case similar to this in a case called Ray Charles v. Robinson, 795 F3D 1109. And the holding of that case is the termination, if effective, would directly extinguish the Foundation's right to receive prospective royalties from the current grants. And it basically says that someone has standing if they are in proximate – a zone of interest to have their royalties cut off from these terminations. They have standing to challenge the – or bring a case like this. But they have to show injury. And they – this court says that if your rights are threatened by the terminations, essentially you have standing to bring this kind of challenge, or at least that was what I understand they're holding in this. But specifically, to Your Honor's point, we did plead the injury in the second amended complaint specifically about believing we didn't get the royalties from these songs, specifically. All right. Any other questions? Thank you, Your Honor. Thank you very much. Thank you for your arguments on both sides. And the case is submitted.